**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0927-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

AFOLABI OSHINAIKE,
a/k/a AFOLABI C. OSHINAIKE,

     Defendant-Appellant.

_____

Submitted May 9, 2022 – Decided August 24, 2022

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 05-04-0538.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Joseph M. Nielsen, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Petitioner Afolabi C. Oshinaike appeals from an order dismissing his petition for post-conviction relief (PCR) as time-barred and without merit and denying his Slater[1] motion premised on alleged ineffective assistance in connection with his 2005 guilty plea to third-degree possession of cocaine with intent to distribute, an aggravated felony that subjected petitioner to mandatory deportation, 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii), for which defendant was sentenced to probation conditioned on 180 days in the county jail. The PCR judge dismissed the petition without an evidentiary hearing, rejecting petitioner's claim his plea counsel gave him incorrect advice about the immigration consequences of his plea, which he had no reason to question before he was placed in U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE) detention in 2019.

Although petitioner's arrest report, criminal history and pre-trial intervention (PTI) papers all correctly reflect he was born in Nigeria or a non-citizen, or both, he answered "Yes sir" when the judge taking his plea asked if he was a United States citizen, and the pre-sentence report, which plea counsel claimed was accurate, states petitioner was born in New York. Petitioner, who was twenty years old when he entered his plea and a lawful permanent resident

---

[1] State v. Slater, 198 N.J. 145, 157-58 (2009).

A-0927-20

since he entered the country at age thirteen with his parents, claimed he answered the judge the way he did because he "thought as a permanent resident that I was just like a United States citizen. I just could not vote." He certified his counsel, who told him he "would not be deported . . . because [he] was not going to State prison" was aware he was a green card holder, but did not correct his misstatement to the judge. Petitioner averred that had he known he was facing mandatory deportation, he "would never have agreed to enter a guilty plea and . . . would have gone to trial." He made no representation as to the error in the pre-sentence report.

The judge rejected petitioner's explanation, finding petitioner "[u]nder oath, unambiguously and without any apparent confusion, . . . falsely testified that he was a U.S. citizen" after having circled "yes" on the plea form to question 17, asking whether he understood "if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty." The judge further found that "[m]onths later, in the [pre-sentence report] for petitioner's sentencing, petitioner listed his place of birth as New York." He thus concluded petitioner's misstatement to the judge taking his plea was

> not an innocent mistake: there is not a scintilla of
> evidence petitioner offers to show he somehow
> conflated the two statuses of legal residency and
> citizenship. If that were the case, why did he assent to

3

A-0927-20

having New York listed as his place of birth in the [pre-sentence report], after having advised [the judge] at the plea hearing that he was a U.S, citizen? Indeed, petitioner reads, writes, and understands English and has attended some college. There is no basis to find that petitioner was simply confused in claiming to be a United States citizen. The record unambiguously establishes that the misrepresentation was intentional.

Based on his finding that "petitioner was the architect of his own plight" by intentionally misrepresenting he was a United States citizen, the judge concluded petitioner could not establish either excusable neglect sufficient to overcome the five-year time bar or that "he was unaware of the immigration consequences of his plea" based on his counsel's incorrect advice. The judge reasoned that

> [a]ssuming, arguendo, that petitioner's lawyer did provide him with this faulty advice, it begs the question why petitioner would deliberately misrepresent his citizenship if he believed only a state prison sentence would subject him to deportation. Put differently, if counsel led him to believe his county jail sentence shielded him from deportation, why falsely claim U.S. citizenship? The only commonsensical explanation for petitioner's misrepresentation is that, aware he was deportable as a non-citizen — something he acknowledged under Question 17 of the plea form — he sought to keep his true citizenship "under the radar" of ICE. Simply stated, knowing the consequences of admitting his non-citizenship in open court, under oath, while pleading to a third-degree drug distribution offense,

4

> petitioner chose to knowingly misrepresent his status
> in an attempt to save himself from deportation.

Petitioner, of course, offered another explanation, the one the judge dismissed as not credible without an evidentiary hearing. Although we accept the possibility that petitioner may not have been truthful in his certification, the case law is unequivocal that the PCR court must view the facts in the light most favorable to the petitioner in deciding whether he has established a prima facie case of ineffective assistance of counsel. State v. Jones, 219 N.J. 298, 311 (2014). The PCR court failed to adhere to that dictate.

While we are not certain a judge hearing all the evidence will agree petitioner received erroneous advice about the immigration consequences of his plea, which he had no reason to suspect prior to 2019 when he was detained by ICE, we are certain if petitioner's assertions were found to be true, enforcement of the time bar would be a fundamental injustice. See R. 3:22-12(a)(1)(A); Lee v. United States, 137 S. Ct. 1958, 1968-69 (2017) (holding a petitioner with little chance of prevailing at trial can still establish prejudice from erroneous immigration advice leading to a guilty plea when deportation was the determinative issue for petitioner in plea negotiations). Accordingly, we vacate the dismissal of petitioner's PCR petition and remand for an evidentiary hearing to permit petitioner the opportunity to establish both

A-0927-20

excusable neglect and that his counsel's erroneous advice about deportation consequences led him to accept a plea he would otherwise have declined. See State v. Garcia, 320 N.J. Super. 332, 340-41 (App. Div. 1999) (holding PCR court should have held an evidentiary hearing as to whether client was affirmatively misinformed about deportation consequences when he entered his guilty plea).

Because the trial court rendered its decision without an evidentiary hearing, our review of its legal and factual determinations is de novo. State v. Harris, 181 N.J. 391, 421 (2004). Petitioner was charged with several drug offenses after police saw him exchange money for drugs in two hand-to-hand transactions near his home in Elizabeth. The arrest report noted he was born in Nigeria.

Petitioner's application for PTI was denied due to "continuing criminal behavior," the "serious nature" of his offense and his failure to obtain a substance abuse evaluation. Although there was no appeal, his lawyer wrote a letter, seeking to "clarify certain issues." Specifically, she asserted petitioner, who had a drug problem, kept his timely appointment for a drug and alcohol evaluation and had already begun a substance abuse program.

6

Counsel also reviewed petitioner's record, noting only one guilty plea to a charge of loitering and a pending charge for obstruction of public passageways. Although he had arrests for simple assault and criminal trespass, counsel claimed both arrests resulted from police arresting a group of juveniles of which petitioner was a part. Both charges were dismissed. Counsel noted petitioner was only twenty years old with an obvious substance abuse problem. He lived at home with his parents, had graduated from high school and was enrolled in his second semester at Essex County College. She maintained petitioner's arrests made clear he had fallen in with "the wrong crowd," but he had taken responsibility for his actions and was making "every effort possible" to turn his life around. Counsel maintained petitioner's young age made him an "excellent candidate" for rehabilitation and the PTI program, and she expected he would "have no further involvement with our judicial system after this experience." Petitioner's PTI papers noted he was a non-citizen born in Nigeria.

Following the denial of his PTI application, petitioner pleaded guilty to third-degree possession of cocaine with intent to distribute with a recommended sentence of probation conditioned on 180 days in the county jail. Although petitioner's plea counsel had obviously reviewed the PTI papers

7

noting petitioner's non-citizen status and counseled him to circle "yes" to question 17 on the plea form indicating he understood if he was not a citizen that he could be deported by virtue of his plea, which PCR counsel noted most U.S. citizens answered by circling N/A, "not applicable," plea counsel did not correct petitioner's statement in the plea colloquy that he was a citizen.

Nor did plea counsel note the error in the pre-sentence report stating petitioner was born in New York. When plea counsel was asked by the sentencing judge whether she had any "corrections or additions," to the report, counsel replied that she "did not see any corrections." Although the PCR judge found petitioner "during his pre-sentence interview . . . claimed to have been born in New York," which the judge termed "not an innocent mistake," we found nothing in the record to support those findings. While it is, of course, possible petitioner affirmatively misrepresented his place of birth to the probation officer completing his presentence report, we assume it's equally possible the error may have been that of the probation officer, who appears not to have noticed that petitioner's arrest report, PTI forms and criminal history,

A-0927-20

which she used to prepare the report, all noted he was either not a U.S. citizen or born in Nigeria, or both.[2]

Petitioner was sentenced on November 4, 2005, in accordance with his plea agreement on the third-degree possession with intent to distribute as well as to a fourth-degree contempt of a judicial order — his first and last indictable convictions. In 2009, his probation was extended for six months following an unidentified violation of probation, and he pleaded guilty to an ordinance violation in 2013. He was arrested another time in 2013 and twice in 2015, but all charges were dismissed. In 2017, he was arrested for driving with a suspended license and confined to the Essex County jail and also apparently arrested in New York City for what his PCR counsel referred to as "a minor traffic violation." None of those encounters with law enforcement triggered any ICE contact. Petitioner even renewed his green card in 2012 without incident. It wasn't until 2019, when petitioner was arrested on a child support warrant, that he was taken into ICE custody.

Petitioner hired counsel and promptly filed his PCR petition, alleging plea counsel provided him ineffective assistance by telling him his plea had no

---

[2] It's not the only error we noticed. Although the first page of the report notes petitioner had pending charges, the narrative section on the last page states he "has no known warrants or detainers nor does he have any pending cases."

adverse immigration consequences and failing to appeal his denial of admission to PTI among other things, and that his failure to file sooner was excusable as he had no reason to question his plea counsel's advice about the immigration consequences of his plea until he was detained by ICE in 2019.

As already noted, the PCR judge denied the petition without an evidentiary hearing and denied petitioner's Slater motion as well, both largely premised on his finding that "petitioner deliberately misled the judges who accepted his voluntary change in plea and sentenced him pursuant to that plea."[3] The PCR judge rejected petitioner's claim his counsel affirmatively

---

[3] Although acknowledging there was no published case addressing "a petitioner's dishonesty related to his immigration status," the judge relied on unpublished cases purportedly holding that "a presumption of deficient representation" is not "triggered" when a petitioner "affirmatively misrepresents his immigration status" and that "a substantial and relevant plea colloquy may cure" plea counsel's faulty immigration advice. The judge dropped a footnote noting that "because R. 1:36-3 proscribes courts from relying on unpublished opinions as binding precedent, the court's reference to [these cases] is for illustrative purposes only." The judge's citation to those unpublished cases, three in total, was improper. Rule 1:36-3 not only makes clear that "[n]o unpublished opinion shall constitute precedent or be binding upon any court," it also prohibits judges from citing them except in limited circumstances not present here. The reason for the rule is clear; not only do unpublished opinions lack precedential value, they "cannot reliably be considered part of our common law." Trinity Cemetery Ass'n v. Twp. of Wall, 170 N.J. 39, 48 (2001) (Verneiro, J., concurring). Their inclusion in the PCR judge's opinion, even for "illustrative purposes only," was error.

misadvised him that he would not be subject to deportation so long as he wasn't sentenced to a state prison term as "a bald, self-serving allegation," finding the claim "makes no sense" and is "irrelevant" in any event because petitioner's plea "was not to state prison" but to the recommended sentence of 180 days in the county jail. The judge found petitioner's reasonable expectations of the plea — that he would avoid a state prison sentence — were met and he couldn't establish excusable neglect based on the mis-advice of his counsel, citing State v. Brewster, 429 N.J. Super. 387, 400 (App. Div. 2013).[4]

Petitioner appeals, arguing he was entitled to an evidentiary hearing on his claims. We agree.

Our Supreme Court has often "reiterated the significance of a petition for post-conviction relief and stressed that a hearing on such a petition 'is not a pro forma exercise, but a meaningful procedure' to root out mistakes that cause an

---

[4] In Brewster, we highlighted the need for a defendant to present "compelling, extenuating circumstances" to meet the "exceptional circumstances" requirement for relaxation of the five-year time-bar, noting a "[d]efendant cannot assert excusable neglect simply because he received inaccurate deportation advice from his defense counsel." 429 N.J. Super. at 400. Brewster, already beyond the five-year deadline for filing a PCR petition, waited another three years after being advised his 1998 conviction "could be a problem" in his efforts to gain U.S. citizenship before finally filing his PCR petition in 2010. Id. at 399-400. The case is not analogous to this one on its facts.

unjust result either in a verdict or sentence."  State v. Parker, 212 N.J. 269, 279 (2012) (quoting State v. Hess, 207 N.J. 123, 144-45 (2011)).  For reasons we cannot fathom, the PCR judge failed to view the facts "[a]s in a summary judgment motion, . . . in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim."  State v. Preciose, 129 N.J. 451, 462-63 (1992).  Instead, the PCR judge did exactly the opposite, viewing petitioner's averments in the harshest light to him.

If the court credits petitioner's averment that his plea counsel told him he would not be deported because he would not be receiving a state prison term, and that advice drove his acceptance of the plea, he has established a prima facie case of ineffective assistance of counsel under the two-prong Strickland[5] standard, entitling him to an evidentiary hearing.  See State v. Nunez-Valdez, 200 N.J. 129, 131 (2009).  Lee makes clear that even a petitioner with no viable defense can establish prejudice from erroneous immigration advice under the second prong of Strickland if that advice was the determinative factor in petitioner's willingness to accept the plea.  137 S. Ct. at 1968-69.

The PCR judge refused to credit petitioner's averment that his counsel had provided him erroneous immigration advice because the judge concluded

_____

[5]  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

A-0927-20

petitioner had knowingly lied to the judge taking his plea. But that is a finding that should not have been made on the papers. As we've already noted, the arrest report, PTI forms and petitioner's criminal history, all of which petitioner's counsel necessarily reviewed, correctly noted he was born in Nigeria or a non-citizen, or both. Petitioner also certified he circled "yes" to question 17 on the plea form with plea counsel's assistance, suggesting she was aware petitioner was not a U.S. citizen. See Garcia, 320 N.J. Super. at 336 (noting counsel's certification that "[i]f any defendant answers that he or she is not a citizen, he customarily circles 'yes' on the plea form"). The discrepancy between the arrest report, PTI forms, criminal history, plea form and petitioner's statement to the judge that he was a U.S. citizen should have been explored at an evidentiary hearing. While we disagree the PCR judge could appropriately find on the papers that petitioner "knowing the consequences of admitting his non-citizenship in open court, under oath, while pleading to a third-degree drug distribution offense, . . . chose to knowingly misrepresent his status in an attempt to save himself from deportation," we note the judge's postulate suggests that deportation was the determinative factor for petitioner in plea negotiations. See Lee, 137 S. Ct. at 1968-69.

We also reject the PCR judge's view that whether petitioner was or was not a U.S. citizen is "irrelevant" because he was advised by virtue of question 17 that "a non-citizen was subject to deportation after pleading guilty." We are not aware of any published case holding that a "yes" answer to the 2005 version of question 17 will spare plea counsel from a finding of ineffective assistance of counsel in the face of wrong or inaccurate advice about the immigration consequences of a proffered plea. See State v. Gaitan, 209 N.J. 339, 361-63 (2012) (discussing the evolution of question 17 and plea counsel's obligation to refrain from giving wrong or inaccurate advice about the immigration consequences resulting from entry of a guilty plea). We further reject the judge's view that "[p]etitioner's claim that his lawyer misinformed him by privately telling him that he would be subject to deportation only if he were sentenced to state prison . . . makes no sense" because the plea agreement called for 180 days in the county and not a State prison term. As we understand petitioner's claim, it is that he accepted the plea precisely because plea counsel advised him the recommended county jail sentence would not subject him to removal, which was incorrect, as petitioner pleaded guilty to an aggravated felony making him mandatorily deportable, notwithstanding his

probationary sentence and no state prison time. <u>See</u> 8 U.S.C. §§1101(a)(43), 1227(a)(2)(A)(iii).

We do not suggest that a petitioner's misrepresentation of his citizenship status in the course of his plea colloquy if made with an intent to deceive the court, will not have consequences, perhaps dire ones. Here, for example, it might, at the very least, preclude an otherwise reasonable finding of excusable neglect because it could undermine petitioner's professed reasons for his failure to file a timely PCR petition, or undermine petitioner's claimed reliance on the allegedly erroneous advice. We find only that the court erred in failing to view the facts in the light most favorable to petitioner and concluding, without testimony, that petitioner "chose to knowingly misrepresent his status" in the plea colloquy "in an attempt to save himself from deportation" on this record. <u>See</u> <u>Garcia</u>, 320 N.J. Super. at 341 (holding the PCR court should not have decided contested issue of material fact on conflicting affidavits without considering testimony of witnesses in open court).

Accordingly, we vacate the dismissal of petitioner's PCR petition and remand for an evidentiary hearing for the court to consider his claims of ineffective assistance of his plea counsel and his motion to withdraw his guilty plea. We express no opinion on the outcome of such hearing. Because the

PCR judge has already deemed petitioner not credible before hearing him testify, the hearing will obviously need to be conducted before a different judge.  See State v. Camey, 239 N.J. 282, 312 (2019).  We do not retain jurisdiction.

Vacated and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0927-20